# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| Bonnie F. | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | Case No. 18 CV 50417 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Bonnie F. appeals a denial of disability insurance benefits. For the reasons set forth below, Plaintiff's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and the decision of the ALJ is reversed and the case is remanded.

## I. BACKGROUND

Plaintiff, who is now 68 years old, claimed disability for a variety of conditions including head, back, neck, and leg pain, knee surgery, carpel tunnel, foot pain, headaches, ringing in ears, asthma, and depression. R. 64. After receiving an unfavorable decision by the administrative law judge (ALJ) and a denial by the Appeals Council of her request for review, Plaintiff brings this civil action under 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings under 28 U.S.C. § 636(c).

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

**A. Medical Background**

In September 2013, Plaintiff saw her primary care physician, Dr. Rose Stocker, because she was exposed to cigarette smoke and could not breathe. She has a history of asthma but was not on medication. R. 506. Dr. Stocker ordered pulmonary function tests, which confirmed asthma. R. 500.

On March 7, 2014, Plaintiff fell on the ice landing on her back and hitting her neck on the curb while working as a certified nursing assistant (CNA) at a nursing home. R. 47, 354. She went to immediate care and was given Naproxen and Tylenol to help with pain. Plaintiff visited Dr. Stocker's office a few days later. She had 7/10 pain that was constant and sharp in her lower back and hip. X-rays showed degenerative changes but no acute fracture. Plaintiff reported that she intended to file for workers' compensation. R. 493–94.

In early April 2014, Plaintiff began to see a chiropractor, Brenda Baer. R. 353. In June 2014, Plaintiff was improving but reinjured herself pushing a laundry cart. R. 386. Plaintiff also reinjured her back by helping a patient onto a patient lift. R. 391. The chiropractor recommended restrictions of not pushing laundry carts or lifting patients, but Plaintiff reported that her employer was not honoring those restrictions. R. 387, 396. Plaintiff saw Dr. Stocker again in July 2014 and reported that she was told by her employer not to come back. She felt that she could not do her job, which required pushing heavy carts and beds. R. 466. Later, in September, Plaintiff's chiropractor recommended that Plaintiff could return to work with lifting restrictions. R. 428. However, she was still unable to return to work, and she was instructed by her attorney to file for unemployment and search for a new job. R. 435.

Plaintiff filed for disability insurance benefits on March 10, 2015. In September 2015, Plaintiff underwent a consultative exam by Dr. K.P. Ramchandani. Plaintiff rated her back pain a

2

5/10. The pain was aggravated on bending, lifting, and carrying 25 pounds, walking half a mile on level ground unassisted, and standing for 10 minutes. She complained of "constant aching, burning, and cramping pain in the cervical spine" rating that pain at a 6/10. Plaintiff stated that she had asthma since childhood, but it was stable on medication. Upon physical examination, Plaintiff's gait was normal. She was able to walk on heels and toes, squat and get up from a squatting position without support. She was also able to get on and off the exam table without assistance. There was no sensory deficit to touch and pin prick in all four extremities. R. 525–26. X-rays taken of her right knee revealed "mild to moderate tricompartmental degenerative changes which is more moderate in the medial compartment and patellofemoral compartments." R. 537. Her right wrist x-ray revealed "[t]riscaphe degenerative changes without acute osseous abnormality[.]" R. 538. Her cervical spine x-ray showed "mild cervical spondylosis minimal grade 1 anterolisthesis of C4 on C5 likely degenerative[.]" R. 539. Plaintiff's lumbar spine showed "[u]nchanged lower lumbar spondylosis without acute osseous abnormality." R. 540. Later, a cervical spine x-ray from November 2015 revealed "[m]ultilevel degenerative spondylosis with facet nephropathy seen predominantly in the lower cervical spine." R. 542–43.

In September and December 2015, two state agency physicians, Dr. Victoria Dow and Dr. Douglas Chang, opined that Plaintiff was capable of medium work and light work respectively. Both opined that Plaintiff must avoid pulmonary irritants. R. 70, 84. In January 2016, a medical consultant, Dr. John Harper, agreed with all the limitations imposed by Dr. Chang, including the environmental limitations. R. 583.

On August 19, 2016, Plaintiff went to the emergency room. A chief complaint was not documented, but her chest was x-rayed, and she was administered an albuterol nebulizer and a

3

steroid injection. R. 599–602. She was prescribed a rollator walking device and a nebulizer device. R. 598.

In late August 2016, Plaintiff changed her primary care physician and began seeing Dr. Eleanor Bautista. Plaintiff was using her rescue inhaler about once per week but denied shortness of breath, coughing, wheezing, or chest pain/tightness. Plaintiff was prescribed a Symbicort inhaler and Singulair for her asthma and Meloxicam for her knee pain. R. 713–15. In November 2016, a lumbar spine MRI showed degenerative disc disease (DDD) most prominent at L3-4 and L4-5 levels with moderate to severe foraminal stenosis. Her cervical spine MRI showed multi-level degenerative changes with mild spinal canal narrowing. R. 706–07, 716–17.

Plaintiff saw Dr. Bautista in December 2016 complaining of occasional cough and constant sinus drainage and congestion. She was diagnosed with shortness of breath and chest pain. R. 719–20. In February 2017, Plaintiff followed up with Dr. Bautista for ongoing low back pain that radiates to her legs. Dr. Bautista reviewed imaging of Plaintiff's lumbar spine which showed multilevel chronic disc disease with facet arthropathy. Regarding her knee pain, Plaintiff reported that she got Cortisone injections, but they did not help. She was also taking Meloxicam, Norco, and Gabapentin for her joint pain. R. 698–99. Due to her low back pain radiating to both her legs, Plaintiff sought treatment at the Center for Pain Management in June 2017. R. 723. Plaintiff was also referred to Dr. Olga Goodman for polyarthralgia. Dr. Goodman diagnosed Plaintiff with bilateral primary osteoarthritis of the knee, spinal stenosis in the lumbar region and cervical disc degeneration in the cervical spine. Plaintiff was not sure if she wanted to undergo pain injections and instead wanted to try pain medications, activity modifications, and physical therapy. R. 683–84.

**B. The Administrative Hearing**

The ALJ held an administrative hearing on July 21, 2017. Plaintiff testified that she was a teacher's aide in junior high school from 2002 to 2004 and a CNA from 2004 to 2014. R. 43. As a teacher's aide, she assisted special needs students with eating their lunches, getting around and using the washroom. She was not required to lift any students, but she did have to push students in wheelchairs. R. 44, 57. She stopped working as a CNA in 2014 when she fell on the ice and hit her neck on the curb. Her pain has been constant since then. Plaintiff testified that she takes Tylenol with Codeine to deal with her pain which stays around a level of 5 but can drop to 3 with her pain pills. R. 48–49. She still has tightening in her chest and needs to take her medicine every day to keep it under control. R. 49.

According to Plaintiff she can lift 10 pounds, sit for an unlimited time and stand for 15 minutes. R. 50. She was prescribed a walking device because she had tightness in her chest and was unable to walk steady. She uses this device from time to time and the last time she used it was when she was doing the dishes. R. 51. Plaintiff was also prescribed Albuterol for her chest tightness which she uses twice per week. She reiterated that her neck and back pain was "constant, every minute, every second[.]" R. 56. She similarly testified that her knee pain was constant. R. 58. Other than taking pain pills, Plaintiff tries to exercise, stretch and anything else to alleviate the stiffness in her back and neck. R. 56.

The vocational expert (VE) testified that Plaintiff had past relevant work including that of a Teacher Aide II, Dictionary of Occupational Titles (DOT) code 249.367-074, at a light exertional level in the DOT but medium to heavy as actually performed based on Plaintiff's testimony. R. 60.

**C. The ALJ's Decision**

Following the hearing, on December 4, 2017, the ALJ issued an unfavorable decision denying disability insurance benefits. The ALJ identified the following as severe impairments: obesity, DDD of the cervical spine and the lumbar spine, and degenerative joint disease (DJD) of the right knee. R. 20. The ALJ found that Plaintiff had a residual functional capacity (RFC) to perform light work in that she can lift and carry up to 20 pounds occasionally and 10 pounds frequently, and she can sit for a total of 6 hours in an eight-hour workday with normal breaks except she can never climb ladders, ropes, or scaffolds. R. 21. She found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but these symptoms are not entirely consistent with the medical evidence primarily because of a lack of supportive objective evidence indicating Plaintiff's reports of severe pain and shortness of breath. Finally, the ALJ found Plaintiff capable of performing past relevant work as a teacher aide II as generally performed. R. 26. Thus, the ALJ found Plaintiff to be not disabled.

Plaintiff appealed the ALJ's decision to the Appeals Council, but the Appeals Council denied her request for review. R. 5. Plaintiff now brings this civil action under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to see if it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the reviewing court takes a very limited role and cannot displace the decision by reconsidering facts or evidence or

by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). An ALJ only needs to "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). But even when adequate record evidence exists to support the ALJ's decision, the decision will not be affirmed if the ALJ does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *6 (N.D. Ill. Oct. 29, 2014).

### III. DISCUSSION

Plaintiff raises several arguments relating to the symptom's evaluation, Plaintiff's use of an assistive device, the weight given to the state agency opinions, and the step four determination that Plaintiff could perform past relevant work as a teacher aide II as generally performed. Because the Court is remanding based on the symptom's evaluation, the Court need not address the remaining arguments.

Plaintiff argues that the ALJ improperly evaluated her symptoms of severe pain and shortness of breath.[2] When considering Plaintiff's symptoms, the ALJ must first determine

---

[2] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptoms evaluation process but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (Mar. 16, 2016). SSR 16-3p was republished in 2017. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).

7

whether Plaintiff has a medically determinable impairment that could reasonably be expected to produce the individual's symptoms such as pain and shortness of breath. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). If so, the ALJ must then evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functional limitations. *Id.* at *4. The ALJ must consider several regulatory factors such as 1) Plaintiff's daily activities, 2) the location, duration, frequency, and intensity of the symptoms, 3) factors that precipitate and aggravate pain or other symptoms, 4) the type, dosage, effectiveness, and side effects of any medications Plaintiff takes to alleviate pain or other symptoms, 5) treatment, other than medication, Plaintiff receives, 6) measures other than treatment that Plaintiff uses to relieve her pain or other symptoms, and 7) any other factors. *Id.* at *7–8. This Court will reverse the ALJ's symptoms evaluation only if it was "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). The ALJ must provide specific reasons supporting the symptoms evaluation and those reasons must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003).

Plaintiff argues that the ALJ improperly relied on the lack of objective evidence to discount Plaintiff's symptoms of severe pain and shortness of breath and failed to consider the list of factors set forth in SSR 16-3p. The Commissioner argues that the ALJ was allowed to consider the lack of supportive objective findings. But an ALJ cannot discount Plaintiff's symptoms *solely* because there is no objective evidence. SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does

8

not substantiate the degree of impairment-related symptoms alleged by the individual."). The Seventh Circuit has also held that an ALJ cannot rely "too heavily" on the absence of objective evidence to discount a claimant's symptoms. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) ("[T]he ALJ inappropriately rested his credibility determination too heavily on the absence of objective support for Pierce's complaints without digging more deeply."). Symptoms such as pain sometimes cannot be measured objectively, and an ALJ cannot infer that the lack of objective evidence means that the claimant is faking it. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (collecting cases). Instead, "[i]f the medical record does not corroborate the level of pain reported by the claimant, the ALJ must develop the record and seek information about the severity of the pain and its effects on the applicant." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

      Here, while the ALJ briefly cited Plaintiff's reports of working, certifying for unemployment, and looking for work (which will be addressed below), the ALJ relied not only "too heavily" on the absence of supportive objective evidence but relied almost exclusively on the lack of objective evidence. *See Pierce*, 739 F.3d at 1050. The ALJ states that there is a "lack of supportive objective findings to show disabling functional limitations." R. 25. She states that "the majority of examinations in the record demonstrate there was absence of ongoing strength or sensory deficit and there was . . . normal breathing." *Id.* Finally, the ALJ states that "while there is an objective basis for the claimant's symptoms in the medical evidence, there is not sufficient objective support for the consistency, frequency, or the symptom level that she alleges

9

she has."[3] *Id.* The ALJ committed reversible error by relying almost exclusively on the absence of supportive objective evidence to discount Plaintiff's symptoms.[4]

The ALJ committed further error when she failed to analyze the factors set forth in SSR 16-3p.[5] For example, one of those factors is treatment. *See* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."). Here, the evidence indicates that Plaintiff attempted to treat her pain first through a chiropractor, then through her internist. She obtained a referral to an orthopedic specialist, a rheumatologist, a physical therapist, and a pain specialist. SSR 16-3p and case law indicates that seeking special pain treatment tends to bolster the claimant's credibility. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). While the ALJ provided a chronology of Plaintiff's treatment she did not analyze that treatment in accordance with the regulatory factors. *See Mills v. Colvin*, 959 F. Supp. 2d 1079, 1090 (N.D. Ill. 2013) ("The part of the ALJ's opinion in which he summarized the record before him is not

---

[3] The Court also notes the ALJ's cursory symptom's evaluation. The ALJ does not specify what examinations or objective evidence support or do not support Plaintiff's symptoms. She has not built a logical bridge from the evidence to her conclusions. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

[4] Even if the ALJ did not rely almost exclusively on the absence of objective evidence, the record reveals some objective evidence that does support Plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption."). In November 2016, her lumbar spine MRI showed DDD most prominent at L3-4 and L4-5 levels with moderate to severe foraminal stenosis. Her cervical spine MRI showed multi-level degenerative changes with mild spinal canal narrowing. These findings are consistent with Plaintiff's complaints of neck and back pain, radiating to her arms and legs. *See Spinal stenosis*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/spinal-stenosis/symptoms-causes/syc-20352961 (last visited June 22, 2020).

[5] While the ALJ cited the factors, she never analyzed them in her opinion. Citing the factors without explanation is not enough. *Steel v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

sufficiently specific to show that he actually *analyzed* that evidence in making his credibility determination."); *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("Additionally, the act of summarizing the evidence is not the equivalent of providing an analysis of the evidence."). Even in the chronology, the ALJ does not mention Plaintiff's visit to a pain specialist or a physical therapist. The ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Plaintiff's treatment history may tend to support her complaints of disabling pain. *See, e.g.*, *Goble v. Astrue*, 385 F. App'x 588, 591 (7th Cir. 2010). The ALJ's failure to discuss this, along with the other regulatory factors, was error.

  Finally, Plaintiff argues that the ALJ improperly relied on her "reports of working, and certifying for unemployment, looking for work" to discount her symptoms. R. 25. While this can play a role in the symptom's evaluation, *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Dowlen v. Colvin*, 658 F. App'x 807, 812 (7th Cir. 2016), seeking unemployment benefits, looking for work, or representing that she is able and willing to work may very well be consistent with Plaintiff's symptoms, *Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018) ("But a claimant's desire to work is not evidence that the claimant has embellished his limitations[.]"); *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) ("Persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition."). Here, because the ALJ stated that Plaintiff's certifying for unemployment was a basis for discounting her symptoms without *any* explanation, she did not build a logical bridge between this activity and her conclusion. Thus, this Court cannot determine why the ALJ believed this supported her conclusion regarding Plaintiff's symptoms rather than militate against it.

Plaintiff also argues that the ALJ failed to credit Plaintiff for her good work record, which should have been used to bolster Plaintiff's symptom's evaluation. *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) ("[C]laimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.") (internal quotation marks omitted). Here, Plaintiff has a good work history since 2000, R. 209, which suggests that she is entitled to substantial credibility when she is claiming that she cannot work due to disability. *See Hill*, 807 F.3d at 868. There is also evidence of a strong work ethic where Plaintiff sought to go back to work, but her employer was not honoring the new restrictions recommended by the chiropractor. *See* R. 396; *Ghiselli*, 837 F.3d at 778. The ALJ never considered these possible explanations and simply concluded, without explanation, that reports of working, certifying for unemployment, and looking for work are inconsistent with Plaintiff's symptoms. While the ALJ's symptoms evaluation is entitled to deference, the ALJ has provided no explanation and thus failed to build a logical bridge.

The ALJ's flawed symptoms evaluation cannot be deemed harmless. An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006); *see also McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Here, the ALJ did not state that her decision did not depend on her credibility findings and Plaintiff's account of her pain was not so contradicted by medical evidence as to be incredible. Nor can we be sure that the ALJ would have reached the same conclusion about Plaintiff's disability status if she had properly conducted the symptoms evaluation. *See McKinzey*, 641 F.3d at 892; *Spiva*, 628 F.3d at 353.

12

The ALJ's decision is remanded so that the ALJ can re-evaluate Plaintiff's symptoms consistent with this opinion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and the decision of the ALJ is reversed and the case is remanded.

Date: June 22, 2020          By: _____
                                           Lisa A. Jensen
                                           United States Magistrate Judge